IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LISA GAYNELL HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19cv794-RAH-KFP |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

On September 7, 2012, Plaintiff Lisa Gaynell Harris completed an application for Disability Insurance Benefits. T. 174. As will be discussed below, this matter has already been on review once before and was remanded for additional proceedings. Plaintiff now seeks judicial review of another unfavorable decision of the Administrative Law Judge, again finding Plaintiff was not disabled. T. 518-37. Judicial review now proceeds under 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). Upon careful consideration of the parties' briefs (Docs. 14, 15) and the transcript (Doc. 16), the undersigned RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED for further proceedings consistent with the findings below.

I.   STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d

1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the Court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]"; instead, it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse the Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the Court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general Disability Insurance Benefits ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R.

3

§§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to do the following:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine if a claimant is entitled to benefits:

> (1) Is the person currently unemployed?
> (2) Is the person's impairment(s) severe?
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in Listing of Impairments in Appendix I of 20 C.F.R. Pt. 404, Subpt. P?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. A negative answer to any question except Step 3 leads to a determination of "not disabled." *McDaniel*, 800 F.2d at 1030; 20 C.F.R. § 416.920(a)–(f).

The claimant carries the burden of proof through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of

qualifying for disability once they meet their burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To complete Steps 4 and 5, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242–43. At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "disabled" or "not disabled." *Id.*

### III. BACKGROUND

#### A. Factual Background

Plaintiff was 46 years old on her date last insured for DIB (T. 50, 178). Plaintiff was a member of the United States Army from October 1990 through May 2012 (T. 202, 2031), during which she worked as a postal clerk and a human resources clerk (T. 50). Plaintiff

retired honorably from the military in May 2012. T. 2031. She has been assigned a permanent 100% disability rating by the VA. T. 191, 509-17.

Plaintiff alleges disability due to diabetes mellitus, migraine headaches, a right shoulder and neck impairment, a cervical impairment, lumbago, bilateral knee pain, gastroesophageal reflux, irritable bowel syndrome, an adjustment disorder, insomnia, neuropathy, anxiety, carpal tunnel syndrome, bilateral frostbite of the feet, and lower back pain.[1] T. 174, 200, 2062.

### B. Administrative Proceedings

Plaintiff completed her application for DIB on September 7, 2012, alleging a disability onset date of May 8, 2012. T. 174.[2] Plaintiff's date last insured for DIB was December 31, 2017. T. 524. After an administrative level denial (T. 70), Plaintiff and a VE testified before the ALJ on April 4, 2014 (T. 44-68). On April 24, 2014, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. T. 23-39. The Appeals Council denied Plaintiff's request for review (T. 1-4), and Plaintiff sought judicial review.

On September 18, 2017, this Court remanded Plaintiff's case for further evaluation of the VA's 100% disability rating. T. 1900-14. The Appeals Council remanded Plaintiff's case back to the ALJ for further proceedings. T. 1915-19. On February 27, 2019, Plaintiff

---

[1] The parties appear to agree—as does the undersigned—that a comprehensive recitation of Plaintiff's medical record is not necessary to resolve the issues before the Court. *See* Doc. 14 at 3 (Plaintiff states, "Due to the nature of [Plaintiff's] arguments, a detailed summary of the medical evidence is unnecessary."); Doc. 15 at 2 (the Commissioner provides virtually the same limited medical background as Plaintiff, which is stated above).

[2] Plaintiff also completed a second DIB application on October 3, 2016, alleging a disability onset date of April 25, 2014. T. 2016. Both cases have been consolidated. T. 521.

and a VE again testified before the ALJ. T. 1816-55. On June 20, 2019, the ALJ issued another unfavorable decision, again finding Plaintiff was not disabled. T. 518-37.

### C. The ALJ's Decision

In his June 20, 2019 decision, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of May 8, 2012 through the last insured date, December 31, 2017. T. 524. Second, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, osteoarthritis of the knees, obesity, migraines, generalized anxiety disorder, and depression. T. 524-26. Third, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. T. 526-28. Based on Plaintiff's impairments, the ALJ determined that Plaintiff retained the RFC to perform light work with the following additional limitations:

> [T]he claimant could not climb ladders, ropes, or scaffolds. The claimant could not work at unprotected heights and must avoid concentrated exposure to other hazards. The claimant could occasionally climb ramps and stairs and occasionally stoop, kneel, crouch and crawl. The claimant could not work in areas where explosions occur or could be heard. The claimant is limited to the simple routine tasks of unskilled work that involve simple work decisions and ordinarily have few changes in the work setting. The claimant can occasionally interact with coworkers and supervisors but she could not perform tandem tasks or group tasks where she would have to work in close connection with the coworkers. The claimant could tolerate occasional non-transactional contact with the public, meaning that she may be in the vicinity of the public but not required to interact with them. The claimant could be expected to miss one day of work per month.

T. 528-35. Fourth, the ALJ found that Plaintiff could perform her past relevant work as a postal clerk, as the work did not require the performance of work-related activities precluded by Plaintiff's RFC. T. 535. Fifth, in the alternative, the ALJ found that Plaintiff

could perform other jobs that exist in significant numbers in the national economy, such as a garment sorter, house sitter, and assembler of small products. T. 535-36. Accordingly, the ALJ found Plaintiff not disabled at any time from her alleged onset date of May 8, 2012 through her date last insured of December 31, 2017. T. 537.

IV.   **ISSUES BEFORE THE COURT**

Plaintiff presents three issues for the Court to consider in its review of the Commissioner's decision:

(1)   Did the ALJ properly consider the VA's 100% disability rating and the underlying evidence in support of that rating?
(2)   Did the ALJ violate the *de minimis* standard in finding that the majority of Plaintiff's impairments were not severe?
(3)   Did the ALJ violate agency policy in finding that Plaintiff could perform her past relevant work as a postal clerk?

V.   **DISCUSSION**

As an initial matter, although Plaintiff has presented three issues to the Court, because the undersigned finds the first issue presented—whether the ALJ properly considered the VA's 100% disability rating and the underlying evidence in support of that rating—to be dispositive, the Court confines its review to that issue. *See Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that it was unnecessary to address other arguments when the case would be remanded on a separate issue); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues that may be reconsidered on remand).

As the Eleventh Circuit has long instructed, a disability rating from the VA is "evidence that should be given great weight." *Brady v. Heckler*, 724 F.2d 914, 921 (11th

Cir. 1984) (per curiam) (citations omitted). Although "great weight" does not mean controlling weight, "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *See Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016) (emphasis added) (citing *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)). This is particularly true when the VA gives a 100% disability rating. *Id.* ("A VA rating of 100% disability should [be] more closely scrutinized by the ALJ.").

Summarily rejecting a VA disability rating because it is non-binding (in the SSA context) and relies on different criteria constitutes legal error. *Brown-Gaudet-Evans*, 673 F. App'x at 904. Similarly demonstrative of legal error is not addressing the merits of a 100% VA disability rating—particularly where it is based on the same underlying medical conditions at issue in the SSA proceedings. *Beshia v. Comm'r of Soc. Sec.*, 328 F. Supp. 3d 1341, 1347 (M.D. Fla. 2018) (citing *Williams v. Berryhill*, No. 8:17cv64, 2018 WL 1321275, at *3 (M.D. Fla. Feb. 26, 2018), adopted, No. 8:17cv64, 2018 WL 1316237 (M.D. Fla. Mar. 14, 2018); *Alvarez v. Comm'r of Soc. Sec.*, No. 2:15cv363, 2016 WL 4651373, at *4–5 (M.D. Fla. Sept. 7, 2016)). Proper analysis of a 100% VA disability rating "outlines and explains what medical conditions the VA assessed and how they differ from the claimed SSA disability." *Beshia*, 328 F. Supp. 3d at 1347 (citing *Boyette v. Comm'r of Soc. Sec.*, 605 F. App'x 777, 779–80 (11th Cir. 2015); *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 913–15 (11th Cir. 2015); *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856–57 (11th Cir. 2013)). Absent that analysis, the Commissioner's decision is due to be reversed and remanded for the ALJ to appropriately evaluate and weigh the VA disability

rating. *Beshia*, 328 F. Supp. 3d at 1347 (citing *Williams v. Barnhart*, 180 F. App'x 902 (11th Cir. 2006)).

Here, there is no dispute that the VA assigned Plaintiff a permanent 100% disability rating for her service-connected disabilities. T. 191, 509-17. There is also no dispute that the VA's rating was based, at least in part, on a comprehensive physical and mental evaluation ("C&P evaluation") Plaintiff underwent in August 2013. T. 509-517, 2051-52, 5210-5318. During the C&P evaluation, various medical personnel[3] considered Plaintiff's skin disease; sinusitis/rhinitis; intestinal conditions; gynecological conditions; back, neck, joint and extremity impairments; diabetes mellitus; migraines; and peripheral nerve damage. T. 5213. The accompanying C&P Report found in part that Plaintiff had to lie down intermittently and had difficulty concentrating due to her frequent headaches (T. 5223); had fecal urgency due to her various intestinal conditions (T. 5231); had urinary frequency and intermittent confusion due to her diabetes (T. 5238); had lower pelvic pain

---

[3] There appear to be several portions of the C&P evaluation and accompanying Report, including physical, psychological, and psychiatric. The physical portion of the Report was completed by John D. Sweatt, CRNP, Ambulatory Care Nurse Practitioner; the psychological portion of the Report was completed by Barry S. Wood, Ph.D.; and the psychiatric portion of the Report was completed by Julie Bartholomae, D.O.. T. 5210, 5310, 5314. The Commissioner argues that, because the physical portion of the Report was completed by a Nurse Practitioner, it is not an acceptable medical source and is not entitled to any specific weight. Doc. 15 at 10. While the Commissioner is correct that non-medical opinions are not entitled to *specific* weight, they are nonetheless entitled to some level of consideration when they may affect the outcome of the case. *See Hollinger v. Colvin*, 2015 WL 1470697, at *6 (S.D. Ala. Mar. 31, 2015) ("While the opinions of other sources, such as nurse practitioners and mental health counselors, are not entitled to deference, generally the ALJ should explain the weight given to opinions from these other sources, or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case.") (citations and internal quotation marks omitted). Additionally, as recognized by the Commissioner, a portion of the Report does constitute a medical source. *See* Doc. 15 at 10, n.5. Thus, the mere fact that a portion was authored by a Nurse Practitioner does not permit the ALJ to disregard the Report in its entirety, particularly when it formed the basis of a 100% disability rating by the VA. *See Madise v. Astrue*, 2009 WL 3078294, at *11 (S.D. Ala. Sept. 23, 2009) ("An ALJ is not free to disregard the opinions of health care professionals simply because they are not medical doctors.") (citations omitted).

(T. 5237); had functional loss of her cervical spine, including "less movement than normal" and "pain on movement" (T. 5245); had difficulty driving (T. 5248); required use of a cane on a regular basis (T. 5249, 5269); had difficulty lifting and working overhead due to functional loss of her right shoulder (T. 5257, 5261); had difficulty with repetitive bending and could not stand or walk for extended periods of time (T. 5271, 5278); had pain switching from a sitting to standing position (T. 5278, 5286); had difficulties with walking on uneven surfaces (T. 5294); and had problems writing and using a keyboard as a result of her carpal tunnel syndrome (T. 5307). The Report found that the above conditions impacted Plaintiff's ability to work.

> Regarding the VA's analysis and determination, the ALJ stated simply:
>
> The undersigned has considered the claimant's VA disability rating . . . in formulating the [RFC]. The VA assigned the claimant a permanent 100% disability rating for her service-connected disabilities. The claimant was denied individual unemployability because the evidence does not show that she is unable to secure or follow a substantially gainful occupation as a result of her service-connected disabilities[.] The undersigned gives great weight to the VA finding that the claimant has some functional limitations related to her impairments. However, a decision by another government agency about whether the claimant is disabled is based on its own rules and is not binding on the [SSA].

T. 534. The ALJ then stated, in a broad manner, the ways in which VA standards differ, generally, from SSA standards. *Id.* at 534-35. Nowhere in this description does the ALJ address Plaintiff's underlying evidence supporting the VA's determination or what medical conditions the VA assessed and how they differ from Plaintiff's claimed SSA disabilities. Thus, the record is unclear whether the ALJ closely scrutinized the VA's determination and on what basis he discounted that determination other than the differing standards.

11

While the ALJ does state that he gives "great weight" to the VA's finding "that the claimant has some functional limitations related to her impairments," he does not address what those impairments are, what evidence was used in support of those impairments, or why, specifically, he does not find that evidence persuasive and ultimately deviates from the VA's findings. Instead, he references the non-binding nature of the VA's decision. However, as noted above, the ALJ may not summarily reject the VA's disability rating simply because it is non-binding and relies on different criteria. *Brown-Gaudet-Evans*, 673 F. App'x at 904 ("It is not disputed that the VA's 'disability' determination relies on different criteria than the SSA's determination. But that does not mean that the ALJ can summarily ignore the VA's determination[.]"); *Williams*, 2018 WL 1321275, at *3 ("Although VA disability standards are lower than the Commissioner's standards, the ALJ must still consider the VA's disability rating and cannot reject it based on mere fact that it is not binding.") (citation omitted).

The ALJ's opinion does not provide adequate indication that the ALJ thoroughly reviewed and comparatively assessed the VA Rating Decision and underlying evidence as required.[4] *See id.*; *cf. Boyette*, 605 F. App'x at 779–80 (affirming ALJ's decision to not

---

[4] The Commissioner argues that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" and cites two supporting Eleventh Circuit cases. *See* Doc. 15 at 6-7. However, those cases are distinguishable from this case. In *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531 (11th Cir. 2014), the Eleventh Circuit rejected the claimant's argument that the ALJ erred by failing to specifically address a neurologist's opinion that the claimant should avoid frequent overhead reaching and needed to take 5-minute breaks every 45 minutes. The court held that the ALJ's decision "made clear that he considered both the neurologist's opinion and [the claimant's] medical condition as a whole." *Id.* at 534. In *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671 (11th Cir. 2014), the Eleventh Circuit rejected the claimant's argument that the ALJ erred by not explicitly assigning weight to every part of a doctor's opinion and not discussing the doctor's opinion that the claimant would need to lie down at times throughout a workday. However, this is not a case in which the ALJ simply failed to cite part of an opinion; in this

assign controlling weight to VA rating when ALJ "scrutinized the VA's decision and explained in detail why it was not entitled to controlling weight" while considering the underlying evidence); *Adams*, 542 F. App'x at 857. The ALJ's cursory treatment of the VA's 100% disability rating constitutes legal error, and such error necessitates remand. *See Brown-Gaudet-Evans*, 673 F. App'x at 904. "On remand, the ALJ is not required to give the VA's disability determination controlling weight," but he "must <u>seriously consider</u> and <u>closely scrutinize</u> the VA's disability determination" and "give <u>specific reasons</u> if [he] discounts that determination." *Id.* (emphasis added).[5]

## VI. CONCLUSION

Absent the ALJ's specific consideration of the evidence in support of the VA's 100% disability rating, the Court cannot find the ALJ's determination that Plaintiff is not

---

case, the ALJ did not address—and, therefore, failed to make clear that he considered—the entire extensive C&P Report underlying the VA's disability rating. The ALJ's apparent lack of consideration of this evidence is bolstered by his finding that "[t]here is no evidence in the record that [a] cane is medically necessary for prolonged ambulation" and "[t]he claimant generally walks with a normal gait with no mention of a cane." T. 532. To the contrary, the C&P Report notes that Plaintiff walked with an "abnormal gait" and a "mild limp" due to multiple joint pain (T. 5300); had difficulty walking for extended periods and on uneven surfaces; and required regular use of a cane.

[5] In January 2017, the Commissioner amended 20 C.F.R. § 404.1504 to state:

> [I]n claims filed . . . on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . . about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency['s] decision that we receive as evidence in your claim[.]

Although both parties agree that this amendment does not technically apply to this case, as Plaintiff's claim was filed prior to March 27, 2017, both parties cite to this amendment in support of their briefs. The Commissioner argues that it "provides further support for the Commissioner's position that the VA's rating decision is not relevant in Plaintiff's case." Doc. 15 at 6, n.3. However, Plaintiff argues, and the undersigned agrees, that it demonstrates the Commissioner "may have been entitled to disregard the VA's rating" but "he was not entitled to ignore the underlying medical source opinions supporting that rating." Doc. 14 at 7.

13

disabled is supported by substantial evidence.[6] It is not clear whether the ALJ's determination will be altered when the ALJ considers that evidence—that decision remains for the ALJ. Accordingly, the undersigned does not recommend reversal and remand for an award of benefits. Rather, the undersigned recommends remand so that the ALJ can assess the underlying opinion evidence supporting the VA's 100% disability rating and, thereafter, determine Plaintiff's RFC.

Accordingly, for the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Commissioner be REVERSED and REMANDED under 42 U.S.C. § 405(g) so that the Commissioner can conduct additional proceedings consistent with this Report and Recommendation.

It is further

ORDERED that on or before **March 18, 2021**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

---

[6] In his brief, the Commissioner attempts to defend the ALJ's conclusion by citing to specific supporting instances in the record that took place in 2015 and 2017. *See* Doc. 15 at 8. For instance, the Commissioner notes that, "in January 2017, Plaintiff's neurological examination was generally normal" and Plaintiff stated that she had one to two headaches per month. The Commissioner further argued that ARNP Sweatt's "opinion that Plaintiff would regularly require a cane is contrary to the weight of the evidence, as consultative doctor Dr. Ellis stated she ambulated normally and saw no evidence of joint instability [in January 2017]." *Id.* at 10. However, these findings in 2017 do not necessarily negate a finding that Plaintiff was disabled in and for the requisite time period prior to 2017. For instance, in the C&P Report from 2013, ARNP Sweatt noted that Plaintiff walked with an "abnormal gait" and a "mild limp" due to multiple joint pain (T. 5300) and Dr. Bartholomae noted that Plaintiff suffered from anxiety, chronic sleep impairment, disturbances of motivation and mood, and difficulty in adapting to stressful circumstances, including work or a work-like setting (T. 5315).

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 4th day of March, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE